UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEREK L. ANDERSON, SR.,

                 Plaintiff,

                                                              **Hon. Hugh B. Scott**

            v.                                                            11CV784A

                                                                     **Report**
                                                                      **and**
MICHAEL J. ASTRUE, Commissioner the of        **Recommendation**
Social Security Administration,

                 Defendant.
_____

      Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 10 (plaintiff), 8 (defendant Commissioner)).

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the defendant Commissioner of Social Security that plaintiff is not disabled and, therefore, is

not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

      The plaintiff, Derek Anderson, Sr. ("Anderson" or "plaintiff"), filed an application for

disability insurance benefits on March 13, 2009.  That application was denied initially and on

reconsideration.  Plaintiff appeared before an Administrative Law Judge ("ALJ"), who

considered the case de novo and concluded, in a written decision dated December 15, 2010, that

plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision

became the final decision of the Commissioner on July 26, 2011, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on September 19, 2011 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 8, 10). The motions were argued and submitted on May 11, 2012 (Docket No. 16).

## **FACTUAL BACKGROUND**[1]

Plaintiff was born on May 21, 1964, and was 47 years old in 2011. He is a high school graduate and attended one year of college (R. 31) and defendant Commissioner states that plaintiff's last work was as a janitor doing light work (Docket No. 9, Def. Memo. at 2; R. 113, 153) and performed security work at a hospital in 2003 (Docket No. 9, Def. Memo. at 2-3; R. 44, 103).

He claims disabilities from a seizure disorder; obesity; status post left lower extremity angioplasty and thrombectomy; peripheral artery disease (or "PAD") of lower left extremity, with an onset date of January 28, 2009. He claims that he was fired the next day after experiencing a seizure (Docket No. 9, Def. Memo. at 2). Plaintiff weighted 264 pounds in April 2009 when he complained of lower leg pain following a seizure (R. 237; see R. 111), in June 2009 he weighed 255, with a Body Mass Index of 34.5 (R. 236).

## **MEDICAL AND VOCATIONAL EVIDENCE**

At issue is the middle step in the evaluation process (see R. 18 (findings as to steps 1 and 2)). At step 3 of the five-step sequential evaluation process, Administrative Law Judge Robert

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

Harvey found that plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in the Social Security regulations (R. 18), finding that, following review of plaintiff's medical record, his impairments were severe but not severe enough to meet or medically equal a listed impairment (R. 19). The ALJ noted that no treating or examining physician found equivalent in severity to the criteria for any listed impairment and the ALJ considered the listing for epilepsy (listing 11.02) and for chronic venous insufficiency (listing 4.11) and found that "the medical evidence does not show an impairment of the severity as those described in these listings" (R. 19).

On September 29, 2006, plaintiff was admitted to Sisters of Charity Hospital for a seizure (R. 20, 179-81), with an EEG and CT scan showing no abnormality. Plaintiff's last seizure was in 2003 (R. 20). Plaintiff admitted that he stopped taking Depakote about a month before the 2006 seizure and the examiner concluded that the seizure was due in part to non-compliance with medication (R. 20). The ALJ found another instance of non-compliance in 2009 and found that if plaintiff were more compliant his condition would not have been as severe as alleged (R. 20, 220).

Later in 2009, plaintiff complained of left leg pain, with this pain starting after a seizure on January 26, 2009, with his calf swelling at times (R. 20, 236-37). On examination, there was no swelling (R. 20, 237). Plaintiff's hypertension was uncontrolled and his Depakote was discontinued and he was prescribed Carbamezepine (R. 20, 237). On June 23, 2009, plaintiff was advised to go to the emergency room because of his blood pressure and was given Epitol rather than Carbamezepine. Plaintiff had slurred speech, dizziness, and stated that he felt drunk. (R. 20, 236.)

Plaintiff was examined by Dr. Samuel Balderman for a consultative internal medicine examination on May 28, 2009 (R. 20, 247-51).  Plaintiff had not worked for five months when he was examined (R. 247).  Plaintiff was 6' 3" and weighed 260 pounds when examined (R. 248). Dr. Balderman noted plaintiff's seizure history and hypertension but also that plaintiff had "symptom magnification" (R. 250) and advised that plaintiff should not work from heights or operate heavy machinery (id.).  The ALJ "gives some weight to Dr. Balderman's findings" (R. 21).

Plaintiff submits the evaluation of Dr. Jesslyn Perry (R. 263), who opined that plaintiff could sit for only 2 hours at one time and sit, stand and walk up to 3 hours during a work day. Dr. Perry noted that plaintiff suffered another seizure on September 18, 2010, after being seizure free on medication.  (R. 263.)  The ALJ, however, gave little weight to Dr. Perry's findings because there was no evidence to support this residual functional capacity (R. 21).

Plaintiff also was examined by Dr. Linda Harris, on March 1, 2010, as a follow-up of claudication, a limp (R. 21, 268).  Plaintiff's left leg was more affected than his right (R. 268). Dr. Harris found that plaintiff had lifestyle limiting claudication, recommending continued exercise and that plaintiff stop smoking (R. 268).

One month later, plaintiff underwent right common femoral artery retrograde access, aortogram, pelvic angiogram, selective left lower extremity artery angiogram, balloon angioplasty, angiolet thrombectomy of the left superficial femoral artery, and Star Close closure of the right common femoral artery access (R. 21, 278-79).

On September 29, 2010, Dr. Harris reported that plaintiff, as follow up to his peripheral arterial disease, complains of bilateral foot and ankle pain, but denied any calf or thigh

claudication, rest pain, or ulcerations (R. 21, 267). He had stable peripheral vascular disease, improved on his lower left extremity following endovascular intervention (R. 22, 267).

On November 10, 2010, Dr. Perry found that plaintiff was 100% totally disabled (R. 22, 288). The ALJ, however, gave this finding little weight because he saw no evidence submitted by the doctor to support it and that the ultimate finding of disability was for the Commissioner to make (R. 22).

The ALJ then found that there was no persuasive evidence of severe and frequent seizure activity and the residual functional capacity assessment of light work--standing or walking for 6 hours in an 8-hour workday, sit for 2 hours (R. 19; Docket No. 9, Def. Memo. at 16)--was supported by the medical record before him (R. 22).

During the hearing, plaintiff testified that he no longer does household chores due to vertigo and sometimes became dizzy dressing (R. 121). His seizure medication sometimes helps but his hypertension medication did not control his pressure (R. 34). Plaintiff claims that his legs sometimes felt numb and he caught himself from falling on a daily basis (R. 35). He claims that he can only walk a block and a half, can stand only for an hour and a half, and could sit for only 2 hours (R. 48).

After considering the entire record, the ALJ concluded that plaintiff can perform light work and determined that he was capable of performing his past relevant work as a security guard (R. 19, 22).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g);

Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative  substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982);

Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff contends that the ALJ committed several errors that require remand of this matter. First, at the step 4 of the sequential evaluation, the ALJ failed to compare plaintiff's prior work with the residual functional capacity (or "RFC"). Plaintiff had substantial gainful activity as a guard at Sheehan Hospital but that was not disclosed on his application or questioned by the ALJ. The ALJ did not make a credibility finding. The ALJ overly relied upon the consultative examination by Dr. Balderman, since Dr. Balderman examined plaintiff before he was diagnosed with PAD and failed to comment on plaintiff's obesity.

I.     Plaintiff's Prior Work and Undisclosed Work

Social Security Ruling 82-62 requires the ALJ to consider carefully the past work experience, since this finding "has far-reaching implications," is "important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit," SSR 82-62; see Steficek v. Barnhart, 462 F. Supp. 2d 415, 421 (W.D.N.Y. 2006) (Larimer, J.) (Docket No. 11, Pl. Memo. at 7). The ALJ needs to find, among other factors, under that Ruling of the physical and mental demands of the past job, SSR 82-62 (Docket No. 11, Pl. Memo. at 8).

Plaintiff argues that there is no evidence substantiating that his work as a security guard should be considered as past relevant work (Docket No. 11, Pl. Memo. at 8-9). He did not note that job in the list of occupations he had in the fifteen years prior to his application or in his

Activities of Daily Living Questionnaire (id.; R. 113, 153). Plaintiff worked as a security guard at Sheehan in 2003 for less than a year (see R. 103), mentioned for the first time in the ALJ's examination of plaintiff (R. 44), but also on his New Hire, Quarter Wage, Unemployment Query (R. 98, 103).

Plaintiff, not stating precisely how long he worked as a security guard, argues that his income was below the threshold of $800 per month to constitute substantial gainful activity (Docket No. 11, Pl. Memo. at 10). When he worked as a guard he earned over $8,700, below the $800 per month threshold if he worked for eleven or twelve months (id.).

Defendant counters that plaintiff has the burden of showing that he cannot return to past relevant work and the fact that he self-identifies what his work was is of no consequence (Docket No. 13, Def. Reply Memo. at 8). Defendant relies upon plaintiff's admission at the hearing that his job as a security guard was full-time and involved no lifting, did not require him to stand, and was sedentary (id. at 9).

It is unclear why the ALJ picked the occupation of security guard to find that he capable of performing light work. The ALJ found that plaintiff was capable of performing past relevant work as a security guard (R. 22), although he performed that job for a brief period. His last job before his employment ending seizure was as a janitor and his longest held job was "grounding plastic" (for 3 years) for a plastic injection molding firm or as a cook or dishwasher (for 2 years each). Although a vocational expert was noticed for the hearing (cf. R. 83-84, notice to vocational expert), it appears from the transcript that the vocational expert was not called to testify (cf. R. 27-52) and the ALJ does not cite the findings of that expert in determining that plaintiff can return to relevant work as a security guard. There is no basis for the ALJ to pick

9

security guard, as opposed (for example) to janitor or plastic grinder, as the past relevant work. While defendant places the burden of proof on plaintiff to show that he cannot return to his past relevant work, the self-identification of the work plaintiff considers relevant has some bearing. The fact that plaintiff did not identify his job as a security guard has some relevance especially where (as here) the ALJ makes no analysis why this occupation alone is selected. For this reason alone, the ALJ's decision should be **remanded**.

For completeness, this Report next considers plaintiff's other contentions.

II.     Lack of Credibility Findings

Next, plaintiff faults the ALJ for not making credibility findings as to plaintiff and his contentions of disability. Instead, the ALJ concluded that there was nothing in the record to support the severity of the symptoms (R. 20; see Docket No. 14, Pl. Reply Memo. at 8). With a remand of this matter, the ALJ can make a credibility assessment of plaintiff.

III.    Dr. Balderman's Examination

The ALJ (see R. 20-21) and defendant Commissioner (see Docket No. 9, Def. Memo. at 17) rely upon the findings of Dr. Balderman (giving them "some weight" R. 21) to conclude that plaintiff was not disabled and could perform light work.

    A.     PAD Diagnosis

Plaintiff argues that Dr. Balderman examined him before he had PAD, where one symptom of that disease is intermittent claudication (Docket No. 11, Pl. Memo. at 14). He claims that his condition deteriorated since Dr. Balderman's May 2009 examination, conducted four months after the onset date (id. at 13; Docket No. 14, Pl. Reply Memo. at 2). Although Dr. Balderman did not consider plaintiff's subsequent PAD or conduct a second examination

following his diagnosis and treatment for PAD, defendant rests upon treating physician Dr. Harris' notes, in part advising plaintiff to exercise (Docket No. 9, Def. Memo. at 17; R. 268).

On remand, a further consultative examination should be undertaken to consider plaintiff's PAD.

B.     Obesity

Plaintiff is 6' 3", and weighed 255-64 pounds in 2009 (R. 20, 248, 236, 237) and a Body Mass Index of 34.5 (R. 236).  Plaintiff faults Dr. Balderman for not listing obesity as one of plaintiff's diagnoses, given Social Security Ruling 02-1p on obesity (Docket No. 11, Pl. Memo. at 13-14).

Although obesity is no longer a listed impairment, the Social Security Administration still recognizes obesity as causing or contributing to other impairments, SSR 02-1p.  Obesity is defined as a "complex, chronic disease characterized by excessive accumulation of body fat," with clinical guidance defining it as a Body Mass Index of 30.0 or above, id., with the BMIs over 30.0 having three levels, the first up to 34.9, and the third, "extreme" obesity at greater than 40, id.

Dr. Balderman did not make a Body Mass Index finding as to plaintiff.  But plaintiff does not point out within the medical record instances where his treating physician has noted his obesity.  In addition to the notations in his record of his height and weight (e.g., R. 177, 236, 237, 270, 276), there is only one reference to obesity in plaintiff's medical record.  In the discharge papers from Sisters of Charity Hospital following his September 2006 hospitalization, plaintiff was advised to engage in regular exercise and lose weight due to obesity (R. 179).  There is no other reference or connection of this obesity to plaintiff's other conditions.  Thus,

11

Dr. Balderman's failure to note plaintiff's obesity in his evaluation is not erroneous, given the failure of plaintiff's treating physicians to note it as well.

IV.     Treating Physician's Findings

Plaintiff next faults the ALJ for failing to give proper weight to the findings of his treating physician, Dr. Perry (Docket No. 11, Pl. Memo. at 15-19). Plaintiff points to Dr. Perry's treatment notes as supporting her finding that he was disabled (id. at 17; R. 290-95), notes from September 2010 to January 2011. Dr. Perry's note for December 17, 2010 (R. 291), finds that plaintiff's PAD was stable (see also R. 267, Dr. Harris letter of Sept. 29, 2010, reporting same), while later noting in January 18, 2011, that plaintiff declined long acting medication for his leg, back pain and PAD (R. 290).

V.     Depression

Plaintiff's son was murdered on October 7, 2010 (R. 31, 199, 298). Dr. Perry, in concluding that plaintiff was disabled on November 15, 2010, partly found that it was because of plaintiff's "grief complicated by anger" from that death (R. 288, 20; Docket No. 11, Pl. Memo. at 20). Plaintiff's therapist, Rose Washington, found that this grief was very debilitating for plaintiff and diagnosed plaintiff with Adjustment Disorder with Depressed Mood (R. 299-303). Washington also noted that plaintiff would miss more than four days per month from work and his mental impairment would last more than twelve months (R. 303). Plaintiff faults the ALJ for failing to consider his depression as a severe impairment or consider it in combination with other impairments (Docket No. 11, Pl. Memo. at 19), seeking remand for consideration of this condition (id. at 21). Defendant responds that there was no medical or other evidence "indicating that mental health issues posed more than a minimal limitation in plaintiff's ability to perform

basic work activities . . ." (Docket No. 13, Def. Reply Memo. at 2-3), pointing out that his global assessment functioning score for Axis V for overall level of functioning was 60, indicating only moderate symptoms (id. at 3 & n.1; R. 299).

The ALJ made no express findings as to plaintiff's depression or its impact on plaintiff's other stated conditions.  On remand, this area should be investigated.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 8) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 10) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

<i>/s/ Hugh B. Scott</i><br>
Hon. Hugh B. Scott<br>
United States Magistrate Judge

Buffalo, New York
June 11, 2012